PEOPLE *v.* BIOSSAT.

1. CRIMINAL LAW—ARSON—INFORMATION—SUFFICIENCY—VARIANCE. In a prosecution for arson under 3 Comp. Laws 1915, § 15289, an information charging the felonious burning of a "certain hotel known as the Hotel Michigan of the property," etc., *held*, to state a sufficient description of the property burned to sustain a conviction.

2. SAME—EVIDENCE—FICTITIOUS NAMES—VALIDITY OF INSURANCE POLICY.

An objection that the admission in evidence of the fire insurance policy was error because the agents issuing same were doing business under a fictitious name without filing a certificate in conformity with 2 Comp. Laws 1915, § 6349 *et seq.*, *held*, not well taken.

3. SAME—ABSENCE OF REVENUE STAMPS.

The absence of revenue stamps did not render the policy inadmissible, since the insurance company could take no advantage of its failure of duty to affix the same.

4. SAME—CONFESSIONS — VOLUNTARY ADMISSIONS — QUESTION OF FACT.

*Held*, that the trial court properly submitted to the jury, under proper instructions, the disputed question as to whether a claimed confession of defendant was voluntary.

Exceptions before judgment from Charlevoix; Chester, J., presiding. Submitted April 17, 1919. (Docket No. 109.) Decided May 29, 1919.

Cora E. Biossat was convicted of arson. Affirmed.

*J. M. Harris* and *Lisle Shanahan,* for appellant.

*A. L. Fitch,* Special Prosecuting Attorney, for the people.

MOORE, J. This case is here upon exceptions before sentence. We quote from the information which was filed in the case as follows:

"That heretofore to wit on the tenth day of March, A. D. 1917, at the city of Charlevoix and in the county aforesaid, one Cora E. Biossat, late of the city of Charlevoix, in the county aforesaid, feloniously, unlawfully and wilfully did cause or procure the setting fire to and burning of a certain hotel known as the Hotel Michigan of the property," etc., etc.

The respondent was convicted. We quote from the brief of her counsel:

We classify the assignments of error as follows:

"1. The discrepancy between the information and the statute, 3 Comp. Laws 1915, § 15289.

"2. Admission of the insurance policy in evidence.

"3. The admission of the claimed confession in evidence and leaving it to the jury to determine whether the confession was voluntary or not."

We consider these assignments in the same order:

1. We again quote from the brief of counsel:

"The statute reads:

" 'Every person who shall wilfully burn any building or any goods, wares, merchandise, or other chattels, which shall be at the time insured' * * *

"The objection is that a description of Hotel Michigan does not describe any building within the terms of the statute and neither does it describe any goods, wares, merchandise or other chattels, and if it does it does not point out whether the accused is charged with procuring the burning of personal property or real property."

We think that when the information describes the property burned as a certain hotel known as the Hotel Michigan that is the description of a building and is sufficient.

2. It is said that the admission of the insurance policy in evidence was error, *first,* that it was not proven the policy was signed by an authorized agent, and *second,* that no revenue stamps were affixed.

Under the first head counsel for respondent say the agent was doing business under the fictitious name of Myrtie Young & Son; that Earl A. Young claims to have continued to do business as Myrtie Young & Son, and that they filed no certificate of fictitious name as required by the statute (2 Comp. Laws 1915, § 6349 *et seq.*). We think there is nothing in this point. See *Axe* v. *Tolbert,* 179 Mich. 566; *Cross* v. *Leonard,* 181 Mich. 24; *Sauer* v. *Construction Co.,* 179 Mich. 624; *Zemon* v. *Trim,* 181 Mich. 130; *Hager* v. *Schliess,* 184 Mich. 472.

It is also said there was a failure to prove the authority of the agent to countersign the policy. The agent testified that a certificate of authority had been issued to him, but that he was unable to find it. It was then shown by a representative of the insurance department of the State that a certificate of authority had been issued to him. In this connection it is well to say that the policy received in evidence is the same one that was on the building when a fire occurred in the previous November for which the loss then sustained was adjusted. See *People* v. *Jones,* 24 Mich. 224. But it is said that as the policy had no revenue stamps it should not have been received. The insurance company could take no advantage of its failure to affix stamps where it was its duty to do so. We think the policy was properly admitted.

3. Did the court err in its rulings in relation to the admission of the so-called confession? The testimony was very conflicting as to what occurred when the paper was procured.

The circuit judge charged the jury in part as follows:

"There has been some testimony introduced in this case from which it is claimed that this respondent has confessed in writing and admitted orally that she procured the firing of this building. As to this branch of the testimony it is necessary for you to inquire and determine before you can consider it with reference to the guilt of respondent; *first,* whether or not such confession and statements, if you find any were made, were the free and voluntary confessions of the respondent. Also whether or not there was such a loss of memory or disorder of memory or mental confusion that she did not realize that she confessed to committing a crime. If you find they were made and you find they were not her free and voluntary statements, then they cannot be considered by you; or if you find they were made and that they were not intelligently made—that is, that her memory or mind

was so disordered and confused that she did not realize what she said, then they cannot be considered by you.

"I have said you must find whether or not they were free and voluntary. If you find that the claimed confessions were made and were made under fear, compulsion, deceit, threat or duress, or if they were made upon and inducement, promises, hope or expectation that it would be better for her to make them then they would not be the voluntary confessions of the respondent and should not be considered by you.

"I have said you must find whether they were intelligently made—that is, whether or not she knew and understood what she was saying. If the condition of her mind was such because of loss of memory or disorder of memory, or mental confusion, and such impairment of memory had extended to that degree that she did not realize what she said, then it was not her intelligent statement, and could not be considered by you. But if she did mentally appreciate and realize what she said there, then it would be her intelligent statement, and, so far as the question of her mind was concerned, it could be considered by you.

"I have defined to you what is meant by voluntary confessions and also under what state of mental condition she would or would not be held for her statement.

"Then, gentlemen of the jury, if you find these confessions and statements were not the free and voluntary confession of the respondent, or that she didn't know or understand what she was saying, under the instructions I have given you as to these confessions and statements, then they cannot be considered against her. But if they were her intelligent statements—that is, she knew, understood, appreciated and realized what she said, and they were voluntarily made, and made of her own free act without fear, compulsion, deceit, threat or duress, and without any inducement or promises, hopes or expectations of favor, or that it would be better for her to do so—then they may be considered by you, under all the instructions I give you as to confessions, and upon which you are instructed that voluntary and intelligent confessions of a prisoner are received in evidence of guilt upon the presumption that a person will not make an untrue

statement against his or her own interest. The evidence of confessions of guilt is to be received with great caution because of the danger of mistakes from the misapprehension of the witness in detailing the confession, the failure of the witness to use the same words, the infirmity of memory; also because the prisoner may not have expressed the meaning which she intended to convey and it should be remembered and considered that the prisoner is often oppressed by the calamity of the arrest; the fact of being in custody of the officers; the refusal of the officers to allow her to see her husband or an attorney; and also as bearing upon this question you will consider her physical condition, whether weak or strong, all that was said to her and done there and the length of time she was in the room with the officers; the questions asked her and the statements by the prosecuting attorney that she and her husband were in a bad fix, and the statement made to her that Mr. Johnson had confessed and claimed she had hired him to do it, and any other facts or circumstances that you find from the evidence bears upon her condition at that time.

"Subject to these cautions in receiving and weighing evidence or confession, it is generally agreed that deliberate, intelligent and voluntary confession of guilt are among the most effectual proofs—the degree of credit to be given to the claimed confessions in this case is for you, under the evidence in the case and the manner in which they were made. Look over the testimony, gentlemen, with reference to the confessions and statements and determine if they were made, and if made, whether or not they were made deliberately, intelligently and voluntarily on the part of the respondent.

"In determining the effect to be given to these claimed confessions you will also consider the testimony of the experts who have testified before you as to the effect of all these things upon her mental condition and upon her ability to make a voluntary statement at the time she did make it.

"I further charge you that if you find that these admissions or statements were made under such circumstances, under the instructions I have heretofore given you, that you cannot use them, I charge you that

all such confessions or admissions which the people claim she made, you are not to consider,—that is, if the original admissions or confessions are obtained under such circumstances as not to be evidence against the respondent, then all subsequent statements or confessions are impressed with the same infirmities."

In *People* v. *Prestidge*, 182 Mich. 80, Justice BIRD, speaking for the court, said:

"If the preliminary testimony made it clear either that the statement claimed to have been made was voluntary or involuntary, it was the duty of the trial court to admit or reject it. If the testimony left the question in doubt, it was the duty of the court to admit it, and leave the question to the jury under proper instructions to determine whether it was voluntarily made. *People* v. *Barker*, 60 Mich. 277 (27 N. W. 539, 1 Am. St. Rep. 501)."

The respondent was represented at the trial by able and alert counsel. The trial judge was a man of great experience who tried to and did safeguard the rights of the accused. The decisive questions were those of fact. These were carefully and fairly submitted. We find no reversible error. The case is remanded for further proceedings.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.